UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
PATRICK O'SHEA,                )
     Petitioner,               )
                               )
     v.                        )    Cv. No. 06-10785-MLW
                               )
UNITED STATES OF AMERICA,      )
     Respondent.               )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                         September 30, 2009

I. INTRODUCTION

      On May 15, 2003, petitioner Patrick O'Shea was found guilty following a jury trial of being a felon in possession of a firearm in violation of 18 U.S.C. §922(g)(1). The charges arose out of allegations that O'Shea, the passenger in a car pursued by the police, threw a firearm out of the car. O'Shea was sentenced to 180 months in custody, 60 months supervised release, and a $100 special assessment. His conviction and sentence were affirmed by the First Circuit. See United States v. O'Shea, 426 F.3d 475 (1st Cir. 2005).

    O'Shea now seeks relief through a motion to vacate, set aside, or correct his sentence under 28 U.S.C. §2255 (the "§2255 Motion"). The §2255 Motion, filed pro se, claims four grounds justify relief. All of these grounds arise out of allegedly ineffective assistance of counsel.

    For the reasons described below, none of the grounds raised by

1

O'Shea justify relief under §2255. Therefore, the petition is being denied.

II. DISCUSSION

   A. <u>Summary Disposition is Appropriate</u>

As an initial matter, the court finds that this petition may be dismissed without an evidentiary hearing. The First Circuit elaborated the test for granting an evidentiary hearing in a §2255 proceeding in <u>United States v. McGill</u>, 11 F.3d 223 (1st Cir. 1993). As the First Circuit wrote:

> When a petition is brought under section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. <u>See</u> <u>Mack v. United States</u>, 635 F.2d 20, 26-27 (1st Cir. 1980); <u>United States v. DiCarlo</u>, 575 F.2d 952, 954 (1st Cir. [1978]), <u>cert. denied</u>, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978). In determining whether the petitioner has carried the devoir of persuasion in this respect, the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets.
>
> We have distilled these principles into a rule that holds a hearing to be unnecessary "when a §2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case." <u>Moran v. Hogan</u>, 494 F.2d 1220, 1222 (1st Cir. 1974). In other words, a "§2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.'" <u>Shraiar v. United States</u>, 736 F.2d 817, 818 (1st Cir. 1984) (citations omitted).

<u>Id.</u> at 225-26 (some citations omitted). <u>See also</u> <u>United States v. Panitz</u>, 907 F.2d 1267 (1st Cir. 1990).

2

"Moreover, when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." McGill, 11 F.3d at 225.

At the conclusion of the trial at which O'Shea was convicted, the court twice complimented O'Shea's counsel, Roberto M. Braceras. First, the court told the jury: "You saw one of the best tried cases I've ever seen. One of the shortest, but one of the best." May 15, 2003 Tr. at 105. After the jury was excused, the court commented that: "As I said to the jurors, I think this is a case that was exceptionally well tried. I know the stakes were very important. The case was not long, but all of the competing interests were represented very well." Id. at 106. While these contemporaneous observations do not end the inquiry, they are properly cognizable in deciding whether O'Shea's claims of ineffective assistance of counsel require a hearing or are meritorious. See McGill, 11 F.3d at 225.

As set forth below, an evidentiary hearing is not necessary or appropriate in this case. O'Shea's arguments are either inherently incredible, contradict the record, or, if taken as true, entitle him to no relief.

    B.   <u>Ineffective Assistance of Counsel</u>

To succeed on an ineffective assistance of counsel claim, a

petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonable effectiveness; and (2) that counsel's deficient performance was so prejudicial as to undermine confidence in the outcome of the trial.  See Strickland v. Washington, 466 U.S. 668, 699-689 (1984); Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996).

When reviewing counsel's performance, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [should] be made to eliminate the distorting effects of hindsight."  Strickland, 466 U.S. at 689.  Moreover, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Id. at 689 (internal quotation marks omitted).

The "prejudice" element of an ineffective assistance claim presents another "high hurdle."  See Argencourt, 78 F.3d at 16.  To show prejudice, a claimant must affirmatively prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

Here, O'Shea argues that several aspects of Braceras's performance amounted to ineffective assistance of counsel.

1. <u>Failure to Call Kevin Kelley</u>

O'Shea argues that Braceras was ineffective because he failed to interview or call as a witness Kevin Kelley, the driver of the car and O'Shea's co-defendant. O'Shea asserts that Kelley told O'Shea both before and during O'Shea's trial that Kelley was going to plead guilty and was, therefore, willing to testify. Aff. of Patrick O'Shea, Ex. 1 to Reply to Gov't's Resp. to §2255 Mot., at 1. Kelly, however, does not address or confirm this contention in his affidavit. <u>See</u> Aff. of Kevin Kelley, Ex. A to §2255 Mot. O'Shea further asserts that he communicated this information to Braceras both before and during the trial, but that Braceras neither interviewed Kelley nor called him as a witness. Aff. of Patrick O'Shea, Ex. 1 to Reply to Gov't's Resp. to §2255 Mot., at 1.

O'Shea argues that this failure was significant because, contrary to the government's theory that Kelley passed the firearm to O'Shea during the police chase and that O'Shea then threw the firearm out the window of the moving car, Kelley would have admitted that Kelley held the weapon at all times and that Kelley threw the weapon out of the car window. §2255 Mot. at 7-8; Aff. of Kevin Kelley, Ex. A to §2255 Mot. Kelley does state in his affidavit that O'Shea did not possess the firearm; rather, he states that "[d]uring the police chase [Kelley] told Mr. O'Shea to lean back and [Kelley] threw the firearm out the passenger window."

Aff. of Kevin Kelley, Ex. A to §2255 Mot.

O'Shea's claim that Kelley would have testified that Kelley, rather than O'Shea, possessed the firearm contradicts the record and is inherently incredible. See McGill, 11 F.3d at 225-26. Kelley moved to dismiss his own indictment for being a felon in possession of a firearm on May 6, 2003.  The court did not deny this motion until May 16, 2003.  O'Shea's trial spanned May 12, 2003, through May 15, 2003.  Therefore, O'Shea's assertion that Kelley agreed to admit guilt is inconsistent with Kelley's attempt at the time of O'Shea's trial to evade responsibility for his crime.  Furthermore, Kelley's affidavit offers little support for O'Shea's contention.  Kelley now states that, if called to testify, he would have admitted that he, and not O'Shea, actually possessed the firearm at all times.  Aff. of Kevin Kelley, Ex. A to §2255 Mot.  As described earlier, Kelley does not state that he communicated this information to O'Shea before O'Shea was convicted, despite the fact that O'Shea asserts that he and Kelly spoke at least twice about the matter.  Aff. of Patrick O'Shea, Ex. 1 to Reply to Gov't's Resp. to §2255 Mot., at 1.  Similarly, Kelley does not state that he had decided to change his plea to guilty during or before O'Shea's trial.  Aff. of Kevin Kelley, Ex. A to §2255 Mot.

Further, even if taken as true, O'Shea's contention is insufficient to merit relief because a reasonably effective lawyer

6

could have decided not to interview or call Kelley.  In United States v. Lema, 987 F.2d 48 (1st Cir. 1993), the First Circuit held that the failure to interview or call three witnesses was presumed to be sound trial strategy rather than ineffective assistance.  The First Circuit stated:

> The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of anticipated testimony.  The witness may not testify as anticipated, or the witness's demeanor or character may impress the jury unfavorably and taint the jury's perceptions of the accused; or the testimony, though sympathetic, may prompt jurors to draw inferences unfavorable to the accused.  Where the prosecution's case is less than compelling, . . . the risk of "rocking the boat" may warrant a decision by trial counsel to forego the presentation of further defense testimony, even favorable testimony.
>
> . . . .
>
> The decision to interview potential witnesses, like the decision to present their testimony, must be evaluated in light of whatever trial strategy reasonably competent counsel devised in the context of the particular case. . . .  Counsel need not chase wild factual geese when it appears, in light of informed professional judgment, that a defense is implausible or insubstantial as a matter of law, or, as here, as a matter of fact and of the realities of proof, procedure, and trial tactics.

Id. at 54-55 (citations and some internal quotation marks omitted); see Pina v. Maloney, 565 F.3d 48, 55-56 (1st Cir. 2009); Epsom v. Hall, 330 F.3d 49, 54 (1st Cir. 2003).

Even assuming, without finding, that O'Shea's affidavit is reliable concerning his discussion with Braceras about interviewing Kelley, Braceras was reasonable in not making a greater effort to

do so. According to O'Shea, "[a]fter the trial began, Mr. Braceras told me that he never talked to Kelley because his lawyer told Braceras that she would advise Kelley not to testify." Aff. of Patrick O'Shea, Ex. 1 to Reply to Gov't's Resp. to §2255 Mot., at 1. In these circumstances, it was reasonable for Braceras to regard Kelley as unavailable to be interviewed. As explained earlier, until after O'Shea was convicted, Kelley maintained that he was not guilty and was seeking to have the case against him dismissed. While Kelley was seeking dismissal of the case against him, it would have been irresponsible of his lawyer to advise Kelley to testify at O'Shea's trial that he alone possessed the firearm. It was foreseeable that Kelley would follow her advice not to testify and, therefore, not to speak to Braceras. As Kelley was represented by counsel, Braceras could not ethically speak to Kelley in the absence of his attorney. See Mass. Rules of Prof'l Conduct R. 4.2. In the midst of a short and fast-paced trial, it was reasonable for Braceras to make no further effort to interview Kelley.

Moreover, taking as true O'Shea's allegations that he informed Braceras that Kelley would testify that Kelley alone possessed and threw the firearm, effective counsel could have reasonably declined to call Kelley as a witness. Braceras's defense strategy was essentially to argue that the government's evidence either failed to prove beyond a reasonable doubt essential elements of the charge

8

or in fact demonstrated O'Shea's innocence.  See May 15, 2003 Tr. at 31, 38-39.  Braceras presented no witnesses.  See May 14, 2003 Tr. at 126-28.  Instead, he argued: that the pursuing police officers never saw anyone throw a gun from the car; that the police only saw an arm emerge from the passenger window of the car some distance from where the firearm was recovered; that police never saw a firearm inside the car but rather only an unidentified silver object; that no one ever saw O'Shea possess a firearm; that no identifiable fingerprints were on the firearm; that the firearm recovered by police was not linked to Kelley or O'Shea and could have been dropped by someone else long before the incident in question; and that there was no evidence that any firearm possessed by Kelley was not disposed of prior to the police pursuit.  See May 15, 2003 Tr. at 32, 34, 36-37, 40-41, 50, 51; 53.

If Kelley had testified as he allegedly indicated to O'Shea and as O'Shea allegedly communicated to Braceras[1] that "[d]uring the police chase I told Mr. O'Shea to lean back and I threw the

---

[1] It is not clear whether O'Shea alleges that he communicated the exact substance of Kelley's possible testimony to Braceras. See, e.g., §2255 Mot. at 6.  In his second affidavit, he merely states that "I told Mr. Braceras that Kelley was still willing to testify . . . ."  Aff. of Patrick O'Shea, Ex. 1 to Reply to Gov't's Resp. to §2255 Mot., at 1.  Nevertheless, the court assumes, without finding, that O'Shea told Braceras that Kelley would testify on his behalf and take sole responsibility for the firearm.
   Braceras states that he considered whether to call Kelley based on information received from O'Shea.  Aff. of Roberto M. Braceras, Esq., at 2.

firearm out the passenger window," he would have substantially undercut many of Braceras's strongest arguments by admitting that a firearm was possessed while O'Shea and Kelley were in the car and was thrown from it. Further, there was the risk that Kelley would have testified differently when called and the risk that the government's impeachment of Kelley would reflect poorly on O'Shea. See Lema, 987 F.2d at 54-55. Consequently, as Braceras was entitled to select from among the "'countless ways to provide effective assistance in any given case,'" Pina, 565 F.3d at 56 (quoting Strickland, 466 U.S. at 689), and as, even in the best possible circumstances, Kelley's testimony would have substantially weakened Braceras's reasonable defense strategy, an effective lawyer in Braceras's position could have reasonably decided not to interview Kelley or call him as a witness. See Lema, 987 F.2d at 54-55.

In addition, O'Shea has not proven that he was prejudiced by the decision not to call Kelley to testify. Kelley's purported testimony that he asked O'Shea to lean back so he could throw the firearm from the driver's side of the speeding vehicle out the passenger's side window would not likely have been credible. The jury would have been far more likely to believe that if he possessed the firearm while driving, Kelley would have thrown it from the driver's side window or that he would have given it to O'Shea to throw from the passenger's side window. In addition,

10

testimony by Kelley would have opened the door to the admission of evidence that O'Shea fought to keep out of his trial by his successful motion to sever. Such evidence included the fact that Woods, the victim of an armed robbery that immediately preceded the police pursuit of O'Shea and Kelley, identified Kelley as the assailant who used a gun to rob him. See Mem. in Support of Def. Patrick O'Shea's Mot. to Sever (Docket No. 97), at 2, 6, United States v. Kelley, Cr. No. 02-10286-MLW.

In view of the foregoing, O'Shea has not surmounted the high hurdle of establishing prejudice. See Argencourt, 78 F.3d at 16.

### 2. Failure to Advise O'Shea of the Right to Testify

O'Shea also argues that Braceras was ineffective because Braceras failed to advise O'Shea that the ultimate decision whether or not to testify belonged to O'Shea. §2255 Mot. at 10. O'Shea asserts that Braceras told O'Shea, "I don't want you to testify," and that O'Shea did not understand that he could override Braceras's advice. Id. O'Shea states that, had he known that he could testify, O'Shea would have testified that he did not throw the firearm out of the car window. Id.

The First Circuit has held that "failure [by trial counsel] to inform a defendant of his right to testify constitutes performance outside of an objective standard of reasonable competence, and that such performance is constitutionally deficient." Owens v. United States, 483 F.3d 48, 58 (1st Cir. 2007). Furthermore, this failure

11

can be prejudicial "if [a defendant] was not informed by counsel of his right to testify in his own defense, and was not otherwise informed of the right by the court, and would have offered genuinely exculpatory testimony." Id. at 59-60. In Owens, where all these factors were present, and where the allegation was not inherently incredible because trial counsel admitted by affidavit that the defendant was never told of his right to testify, the First Circuit concluded that the district court abused its discretion by denying an evidentiary hearing. Id. at 60-61.

Here, the allegations are inherently incredible, and an evidentiary hearing is not necessary or appropriate. Unlike Owens, in which trial counsel substantiated the defendant's claims, Braceras in this case states that he "told Mr. O'Shea that had the right to testify and that he was responsible for making the final decision as to whether he should testify." Aff. of Roberto M. Braceras, Esq., at 2. Further, unlike the petitioner in Owens, O'Shea himself states that he "had a discussion with Mr. Braceras as to whether I should testify on my own behalf." Aff. of Patrick O'Shea, Ex. B to §2255 Mot. O'Shea's only detailed allegation is that, at one point in the discussion, Braceras advised him not to testify without immediately and explicitly stating that O'Shea could elect to disregard that advice. §2255 Mot. at 10. In view of Braceras's sworn statement and O'Shea's admission that Braceras specifically discussed with him whether he should testify, O'Shea's

12

assertions that Braceras did not explain that O'Shea could make the ultimate decision whether to testify are unsubstantiated and inherently incredible. See Owens, 483 F.3d at 60 (citing United States v. Butt, 731 F.2d 75, 80 n.5 (1st Cir. 1984)).

       3. Stipulation that the Firearm Traveled in Interstate Commerce

O'Shea argues that Braceras was ineffective because he stipulated that the firearm traveled in interstate commerce, despite the fact that the firearm was manufactured in Springfield, Massachusetts. §2255 Mot. at 11. O'Shea asserts that the stipulation is significant because it relieved the government of its burden to prove an element of the offense and because it undercut Braceras's closing argument that the firearm may not have traveled in interstate commerce. Id. at 11-12.

Stipulations are generally considered to be sound trial strategy. See United States v. Fuller, 768 F.2d 343, 346, 347 (1st Cir. 1985)(holding that a stipulation that a firearm was shipped in interstate commerce was neither attorney error nor prejudicial); see also Castillo v. Matesanz, 348 F.3d 1, 15-16 (1st Cir. 2003); United States v. Downs-Moses, 329 F.3d 253, 264-65 (1st Cir. 2003). This is especially true where the stipulated fact is "readily provable simply by reference to public records and the like." Fuller, 768 F.2d at 347. Here, the government called George Hood, manager of transportation and international distribution at Smith & Wesson in Springfield, Massachusetts. May 14, 2003 Tr. at 93-94.

13

As Hood was describing business records evidently intended to prove that the firearm recovered by police had been shipped out of Massachusetts, Braceras offered to "short-circuit" the process by stipulating that the firearm recovered by police had traveled in interstate commerce. Id. at 99. As this stipulation was entirely consistent with the defense's theory that O'Shea never actually possessed the firearm recovered by the police, and as Hood's testimony indicated that the stipulated fact was readily provable in any event, a reasonably effective attorney could have stipulated that the firearm recovered by police traveled in interstate commerce.

Furthermore, the stipulation was consistent with Braceras's closing argument. As O'Shea notes, Braceras stated in his closing argument that the firearm possessed by Kelley (and, therefore, possibly possessed by O'Shea) might not have traveled in interstate commerce. May 15, 2003 Tr. at 52. However, this suggestion was made in the context of Braceras's argument that the gun possessed by Kelley was not the gun recovered by police. Id. Consequently, because the stipulation only covered the firearm recovered by police, Braceras's assertions regarding the uncertain origin of a different firearm are entirely logical.[2]

---

[2]In his reply brief, O'Shea asserts for the first time that Braceras was ineffective because he failed to consult with O'Shea before entering into the stipulation. However, this allegation does not warrant relief, as trial counsel is permitted to make stipulations on the defendant's behalf and without the

14

For these reasons, O'Shea's allegations regarding the stipulation, even if taken as true, do not entitle him to relief.

### 4. Failure to Object to Government's Closing Argument

O'Shea finally argues that Braceras was ineffective because Braceras failed to object to the government's rebuttal to O'Shea's closing argument and to request a mistrial. §2255 Mot. at 12. Specifically, O'Shea points to the following statement by the prosecutor as it is recorded in the transcript:

> I suggest to you it's absolutely meaningless that the defendant's prints weren't found on [the firearm]. In fact, his prints were found. They just weren't identifiable.

Id. at 13 (quoting May 15, 2003 Tr. at 59).[3] O'Shea asserts that this is significant because the government's statement caused jurors to believe, contrary to the evidence presented, that fingerprints found on the firearm were identified as belonging to O'Shea.

Here, even assuming that Braceras's failure to object fell

---

defendant's personal involvement. See Brown v. Artuz, 124 F.3d 73, 77 (2nd Cir. 1997)(citing United States v. Teague, 953 F.2d 1525, 1531 (11th Cir. 1992). Moreover, as explained above, O'Shea has not proved that he was prejudiced by the stipulation to a fact that the government was prepared to prove through Hood's testimony.

[3] The government asserts that the inclusion of the word "his" in the second sentence is a transcription error. This may be true. The draft transcript on the court's computer indicates, in pertinent part, that the prosecutor said, "[t]he fact is prints were found, they just weren't identifiable." However, the final transcript is the official record and the court relies on it, not the draft, in reaching its decision.

below the objective standard of reasonable effectiveness, there is no reasonable probability that the outcome of the trial would otherwise have been different. See United States v. Ortiz, 23 F.3d 21, 26-27 (1st Cir. 1994)(holding defendant was not prejudiced despite repeated failures by trial counsel to object to the government's improper closing argument). A government witness testified at trial that the fingerprint could not be linked to a particular person. May 14, 2003 Tr. at 117. In his closing, Braceras stressed the fact that O'Shea's fingerprints were not found on firearm. May 15, 2003 Tr. at 50-51. The government, in the portion of its rebuttal cited by O'Shea, expressly stated that "[O'Shea's] prints weren't found on [the firearm]." Id. at 59. Furthermore, in the context the government's argument, a statement by the prosecutor that O'Shea's prints were found but were not identifiable could be characterized as inviting an inference rather than as stating a fact. Id. Consequently, any potential improper effect of the government's statement was negated by other events in the proceeding. Therefore, the prejudice necessary to establish constitutional ineffectiveness of counsel has not been proven. See Ortiz, 23 F.3d at 26. Even if taken as true, O'Shea's allegations concerning the prosecutor's rebuttal argument do not entitle him to relief.

III. ORDER

Accordingly, it is hereby ORDERED that:

1. O'Shea's Motion to Vacate Conviction and Sentence Under 28 U.S.C. §2255 (Docket No. 3.) is DENIED.


                                                         /s/ Mark L. Wolf
                                           UNITED STATES DISTRICT JUDGE