UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Cr. No. 02-10286-MLW |
| | ) | |
| PATRICK O'SHEA, | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER

WOLF, D.J.                                                         June 22, 2017

I.    INTRODUCTION

On May 15, 2003, petitioner Patrick O'Shea was convicted of
being a Felon in Possession of a Firearm in violation of 18 U.S.C.
§922(g)(1). The maximum penalty for that offense is ordinarily ten
years. However, the court sentenced him to the fifteen-year
mandatory minimum sentence required by the Armed Career Criminal
Act (the "ACCA") based on his prior Massachusetts state convictions
for unarmed robbery, breaking and entering, assault and battery
with a dangerous weapon, and possession with intent to distribute
narcotics.

On August 28, 2015, O'Shea filed a Motion to Correct his
sentence under 28 U.S.C. §2255, arguing that after the Supreme
Court's decision in Johnson v. United States, 135 S. Ct. 2551,
2563 (2015)("Johnson II"), his prior convictions are no longer
valid ACCA predicates and, therefore, that the ten-year maximum
sentence under 18 U.S.C. §924(a)(2), not the ACCA fifteen-year
minimum under §924(e), applies to him.

For the reasons described in this Memorandum, O'Shea's motion is being allowed. The government correctly concedes that O'Shea's convictions for breaking and entering are not now valid ACCA predicate offenses. See Gov.'s Opp. (Docket No. 246) at 2 n. 1. In addition, the court finds that unarmed robbery under Massachusetts law is also not a valid ACCA predicate offense. Accordingly, O'Shea does not have the three valid ACCA predicates necessary to make him eligible for a fifteen-year mandatory minimum sentence. Rather, the maximum permissible penalty is ten years. As O'Shea has been in custody for more than ten years, he is being resentenced to time-served.

II. BACKGROUND

On May 15, 2003, a jury found O'Shea guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. §922(g)(1). As explained earlier, there is ordinarily a maximum sentence of ten years imprisonment for that offense. However, under the ACCA, a defendant who is convicted under 18 U.S.C. §922(g) and has three prior convictions for violent felonies or serious drug offenses is subject to a mandatory minimum sentence of fifteen years. See 18 U.S.C. §924(e)(1). The court determined that O'Shea was an Armed Career Criminal based on the following five state convictions:

1. A 1991 conviction for unarmed robbery. See PSR at ¶49.

2. A 1990 conviction for breaking and entering in the daytime under Mass. Gen. Laws Chapter 266, §18. See PSR at ¶52.

3. A 1997 conviction for assault and battery with a dangerous weapon. See PSR at ¶57.

4. A 1997 conviction for breaking and entering at night under Mass. Gen. Laws Chapter 266, §16. See PSR at ¶62.

5. A 2001 conviction for possession of heroin with intent to distribute. See PSR at ¶67.

See Jan. 16, 2004 Transcript at 49-51; PSR at 74. Therefore, on January 16, 2004, the court sentenced O'Shea to the mandatory fifteen-year minimum term of imprisonment required by the ACCA, 60 months Supervised Release, and a $100 special assessment.

His conviction and sentence were affirmed by the First Circuit. See United States v. O'Shea, 426 F. 3d 475 (1st Cir. 2005). O'Shea has been in federal custody since May 15, 2003, and has now served more than fourteen years of his sentence.

On May 1, 2006, O'Shea filed a Motion to Vacate his Conviction and Sentence under 28 U.S.C. §2255 alleging ineffective assistance of counsel. See Docket No. 175. On September 30, 2009, the court denied that motion. See Docket No. 176.

On June 26, 2015, the Supreme Court decided Johnson II, which, as explained below, invalidated the "residual clause" of the ACCA. See 135 S. Ct. at 2563. On August 28, 2015, O'Shea filed the instant petition, arguing that, in light of Johnson II, he no longer has at least three prior convictions that constitute violent felonies or serious drug offenses under the ACCA. He argues that

3

the ten-year maximum sentence is, therefore, applicable to him, and that he should be released from custody because he has served more than ten years in prison. The government initially opposed the motion on the grounds that it was a second or successive petition for which O'Shea had not sought leave to file. However, on May 13, 2016, the First Circuit authorized O'Shea to pursue his petition. See Docket No. 232.

III. LEGAL STANDARDS

A. Review Under 28 U.S.C. §2255

A prisoner in federal custody may collaterally attack his sentence under 28 U.S.C. §2255. As the First Circuit has explained:

> Section 2255 contemplates four potential bases on which a federal prisoner may obtain relief: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

Damon v. United States, 732 F.3d 1, 3 (1st Cir. 2013) (quoting 28 U.S.C. §2255(a)). In an action under §2255, "[t]he burden of proof is on the petitioner." Wilder v. United States, 806 F.3d 653, 658 (1st Cir. 2015), cert. denied, 136 S. Ct. 2031 (2016).

Generally, a prisoner challenging his sentence under §2255 may not rely on a rule of law that was announced after his conviction became final. See Butterworth v. United States, 775 F.3d 459, 463 (1st Cir.), cert. denied, 135 S. Ct. 1517 (2015).

4

However, when the Supreme Court announces a new substantive criminal rule or a "watershed rule[] of criminal procedure," that new rule applies retroactively on collateral review. Schriro v. Summerlin, 542 U.S. 348, 351-52 (2004) (internal quotation omitted). This includes collateral review under §2255. See Sepulveda v. United States, 330 F.3d 55, 59 (1st Cir. 2003).

B. The Armed Career Criminal Act

As explained earlier, under the ACCA, a defendant who is convicted under 18 U.S.C. §922(g) and has three prior convictions for violent felonies or serious drug offenses is subject to a mandatory minimum sentence of fifteen years. See 18 U.S.C. §924(e)(1). The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that: (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another;" (2) "is burglary, arson, or extortion, [or] involves use of explosives;" or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another." Id. §924(e)(2)(B). These clauses are referred to respectively as the force clause, the enumerated clause, and the residual clause. See, e.g., United States v. Holloway, 630 F.3d 252, 256 (1st Cir. 2011); United States v. Owens, 672 F.3d 966, 968 (11th Cir. 2012).

In Johnson II, the Supreme Court invalidated the residual clause because it was unconstitutionally vague, overruling James

_v. United States_, 550 U.S. 192 (2007) and _Sykes v. United States_, 564 U.S. 1 (2011). As the Court explained:

> Two features of the residual clause conspire to make it unconstitutionally vague. In the first place, the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime...At the same time, the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony.

135 S. Ct. at 2557. The Court found that its prior decisions "fail[ed] to craft a principled and objective standard out of the residual clause." _Id._ at 2558. Therefore, it held that "imposing an increased sentence under the residual clause...violates the Constitution's guarantee of due process." _Id._ at 2563. In _Welch v. United States_, the Court held that _Johnson II_ announced a substantive rule that is retroactive on collateral review. _See_ 136 S. Ct. 1257, 1265 (2016). Therefore, a prisoner who satisfies §2255's procedural requirements, and who was sentenced as an Armed Career Criminal before _Johnson II_, is entitled to a reduction in his sentence if he does not have at least three convictions that are either (1) "serious drug offenses" or (2) satisfy the force clause or the enumerated clause of §922(e).

IV.  ANALYSIS

A. Procedural Default

The government argues that O'Shea's _Johnson II_ claim is barred because he did not raise it at sentencing or on direct appeal. _See United States v. O'Shea_, 426 F. 3d 475 (1st Cir. 2005).

"A significant bar on habeas corpus relief [under §2255] is imposed when a prisoner did not raise claims at trial or on direct review." Owens v. United States, 483 F.3d 48, 56-57 (1st Cir. 2007). Specifically, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice or that he is actually innocent." Bousley v. United States, 523 U.S. 614, 622 (1998) (internal quotations and citations omitted); Damon, 732 F.3d at 4. To establish cause, the defendant must show "that some external impediment...prevented [the claim] from being raised earlier." Andiarena v. United States, 967 F.2d 715, 718 (1st Cir. 1992). To establish prejudice, he must show that the error complained of "worked to his actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original). This means that there must be a "reasonable probability" that the sentence "would have been different but for the alleged error." Wilder, 806 F. 3d at 658.

A defendant may establish cause for procedural default by, among other things, showing that his habeas claim "is so novel that its legal basis [was] not reasonably available to counsel" at trial or on appeal. Reed v. Ross, 468 U.S. 1, 16 (1984). "'A claim may be held sufficiently novel when, at the time of its default, the legal tools, i.e., case law, necessary to conceive and argue

7

the claim were not yet in existence and available to counsel.'"
Cvijetinovic v. Eberlin, 617 F.3d 833, 837 (6th Cir. 2010) (quoting
Poyner v. Murray, 964 F.2d 1404, 1424 (4th Cir. 1992)). This is
usually the case when the Supreme Court "explicitly overrule[s]
one of [its] precedents" or "overtur[ns] a longstanding and
widespread practice to which [it] has not spoken, but which a near-
unanimous body of lower court authority has expressly approved."
Reed, 468 U.S. at 17. Conversely, when the defendant "had at trial
'the tools to construct [his] constitutional claim,'" there is no
cause for default. Carillo v. Brown, 807 F.2d 1094, 1100 (1st Cir.
1986) (quoting Engle v. Isaac, 456 U.S. 107, 133-34 (1982)).

The Supreme Court has distinguished between novel claims and
claims that are merely futile. See Bousley, 523 U.S. at 623.
"'[F]utility cannot constitute cause if it means simply that a
claim was unacceptable to that particular court at that particular
time.'" Id. (quoting Engle v. Isaac, 456 U.S. 107, 130 n.35
(1982)). In other words, "adverse circuit precedent in the relevant
district" does not make an argument "unavailable." Damon, 732 F.3d
at 5 (citing Bousley, 523 U.S. at 622); Simpson v. Matesanz, 175
F.3d 200, 211 (1st Cir. 1999). Reed and Bousley, therefore, require
the court to distinguish "between merely adverse precedent in the
relevant district...and longstanding and widespread practice."
United States v. Duval, 957 F. Supp. 2d 100, 112 (D. Mass. 2013)
(internal quotations and citations omitted).

At the time of O'Shea's sentencing, before _Johnson II_, many of O'Shea's ACCA predicates were considered "violent felonies" based on the residual clause of the ACCA. _See_, _e.g._, _United States v. Rodriguez_, 659 F. 3d 117, 119 (1st Cir. 2011)(affirming that larceny from the person, a lesser included offense of robbery, was covered by the residual clause and citing _United States v. De Jesus_, 984 F. 2d 21, 25 (1st Cir. 1993), a case holding that the crime was covered by the identically-worded residual clause of the Career Offender guideline). In _Johnson II_, however, the Supreme Court held that the residual clause of the ACCA was unconstitutionally vague. _See_ 135 S. Ct. at 2563.

The vagueness argument was first raised in 2007 by Supreme Court Justice Antonin Scalia _sua_ _sponte_ in dissent in _James_, 550 U.S. at 229. In _James_, a majority rejected Justice Scalia's view. Before _James_, and when O'Shea's sentence became final in 2005, every circuit to consider the constitutionality of the ACCA found that neither the residual clause nor the force clause was unconstitutionally vague. _See United States v. Childs_, 403 F. 3d 970, 972 2005)("We agree with every other circuit that has considered th[e] argument [that "§924(e) is unconstitutionally vague"] and hold that it has no merit."). Therefore, at the time of O'Shea's appeal, sentencing enhancements under the residual clause were "a longstanding and widespread practice...which a near-unanimous body of lower court authority ha[d] expressly

approved," and against which the grounds for a constitutional challenge had not yet been laid, Reed, 468 U.S. at 17, as courts in this district have unanimously held. See, e.g., United States v. Lattanzio, 2017 WL 519241, at *2 (D. Mass. Feb. 8, 2017)(Ponsor, D.J.); United States v. Webb, 217 F. Supp. 3d 381, 388 (D. Mass. 2016)(Young, D.J.).

Moreover, in Johnson II, the Supreme Court noted its own "repeated attempts and repeated failures" since James, in 2007, at interpreting the residual clause, and reaffirmed that "the failure of persistent efforts...to establish a standard can provide evidence of vagueness." 135 S. Ct. at 2558-59 (citing Sykes, 131 S. Ct. 2267 (2011); Chambers v. United States, 555 U.S. 122 (2009); Begay v. United States, 553 U.S. 137 (2008); and James, 550 U.S. 192 (2007) as such failed efforts). There was, therefore, no reasonable basis for counsel to "urge [a lower] court to adopt the position that [the] Court [] ultimately adopted." Reed, 468 U.S. at 17.

The near-unanimous rejection of void-for-vagueness arguments before Johnson II distinguishes this case from Damon and Bousley, in which the petitioners could have relied on favorable out-of-circuit precedent, which existed before they were sentenced, to raise their claims on direct appeal. See Webb, 217 F. Supp. at 389-90. In Bousley, the petitioner's claim was based on an argument accepted in Bailey v. United States, 516 U.S. 137 (1995), that

"us[ing] a firearm" under 18 U.S.C. §924(c)(1) meant "active employment" rather than mere "possession." Bousley, 523 U.S. at 616. The Court held that Bousley defaulted that argument by failing to raise it in his 1991 appeal. Id. at 621-22. By 1991, several circuits had endorsed the "active employment" interpretation of §924(c) before Bousley pled guilty. See Bailey, 516 U.S. at 142-43 (describing circuit split). Similarly, in Damon, where the petitioner attempted to raise a defaulted argument that the First Circuit later accepted in United States v. Holloway, (1st Cir. 2011), favorable Supreme Court and Seventh Circuit case law existed to support his claim at the time he was sentenced. See Damon, 732 F. 3d at 5; Holloway, 630 F. 3d at 260.

Therefore, O'Shea has established cause for his procedural default. In addition, he has shown actual prejudice as a result of being incorrectly sentenced as an Armed Career Criminal. As explained below, O'Shea has shown that he did not have at least three valid ACCA predicate offenses at the time of sentencing. Because his sentence would have been a maximum of ten years in custody if the court had applied the more limited definition of "violent felony" later adopted in Johnson II, and made retroactive in Welch, O'Shea has not only established a "reasonable probability," Wilder, 806 F. 3d at 658, but a certainty that his sentence would have been lower absent the error. Wilder, 806 F. 3d at 658.

11

B. <u>Sentencing Enhancement under the ACCA</u>

As indicated earlier, to qualify as a valid ACCA predicate, the offense underlying a prior conviction must qualify as either a "serious drug offense" or a "violent felony." 18 U.S.C. §924(e)(1). After Johnson II, to be a "violent felony," the offense must satisfy either the "force" clause or the "enumerated" clause of 18 U.S.C. §922(e). The government does not argue that O'Shea's robbery conviction satisfies the enumerated clause. To satisfy the force clause, the offense must have as an element the "use, attempted use, or threatened use" of "violent force--that is, force capable of causing physical pain or injury to another person." Johnson I, 559 U.S. at 140 (emphasis in original).

A three-step analysis is required to determine whether the offense of conviction involves "violent force" as an element. See United States v. Faust, 853 F. 3d 39, 50-51 (1st Cir. 2017). The analysis begins with a "categorical approach." Id. (citing Taylor v. United States, 495 U.S. 575, 602 (1990)). The inquiry is "categorical" because it requires the court to consider only "how the law defines the offense," and not "how an individual offender might have committed it on a particular occasion." Begay v. United States, 553 U.S. 137, 141 (2008) (citing Taylor, 495 U.S. at 602). With regard to the force clause, the court must decide whether the elements of the offense require the government to show that the defendant used, attempted to use, or threatened to use violent

12

force. See United States v. Fish, 758 F. 3d 1, 6 (1st Cir. 2014). "If the answer is yes, then a conviction under the statute will always count as a predicate under the ACCA." Faust, 853 F. 3d at 51. However, if there is a "realistic probability," and not merely a "theoretical possibility," that Massachusetts "would apply its statute to conduct" that does not involve violent force, then the statute is overbroad and not a valid predicate, even if the defendant in fact used violent force in committing the offense. United States v. Edwards, 2017 U.S. App. LEXIS 8831, at *4-5 (1st Cir. May 19, 2017)(quoting Moncrieffe v. Holder, 133 S. Ct. 1678, 1684-85 (2013)).

A conviction under an overbroad statute does not qualify as a valid ACCA predicate unless the statute is "divisible" into separate crimes. At step two of the analysis, therefore, the court must decide whether the statute defining the crime involves "a single, indivisible set of elements," or is instead "divisible" into two or more alternative sets of elements. Descamps v. United States, 133 S. Ct. 2276, 2283 (2013) (internal quotation omitted). Not every statute that uses disjunctive phrases is divisible. See Mathis v. United States, 136 S. Ct. 2243, 2249 (2016). Rather, the court must determine whether the statute "'merely specif[ies] diverse means of satisfying a single element of a single crime,'" or establishes "'elements in the alternative...thereby defin[ing]

multiple crimes.'" <u>United States v. Tavares</u>, 843 F.3d 1, 15 (1st Cir. 2016)(quoting <u>Mathis</u>, 136 S. Ct. at 2249). "Elements" are:

> the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.' At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant, and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty.

<u>Faust</u>, 853 F. 3d at 51 (quoting <u>Mathis</u>, 136 S. Ct. at 2284).[1] If an overbroad statute contains only one set of elements, it is not a valid ACCA predicate, even if the defendant in fact used violent means to commit it. See <u>Descamps</u>, 133 S. Ct. at 2283

If, however, the statute is divisible into two offenses, the court moves to step three and applies the "modified categorical approach" to determine whether the defendant was convicted of the "violent" form of the offense. <u>Id.</u> at 51 (citing <u>Descamps</u>, 133 S. Ct. at 2281). At step three, the court may look at a limited set of documents, referred to as "Shepard" documents, see <u>Shepard v.</u>

---

[1] In <u>Mathis</u>, the Supreme Court provided an example:

> suppose a statute requires use of 'a deadly weapon' as an element of a crime and further provides that the use of a 'knife, gun, bat, or similar weapon' would all qualify. Because that kind of list merely specifies diverse means of satisfying a single element of a single crime—or otherwise said, spells out various factual ways of committing some component of the offense—a jury need not find (or a defendant admit) any particular item.

136 S. Ct. at 2249 (quoting <u>Descamps</u>, 133 S. Ct. at 2289).

*United States*, 544 U.S. 13, 16 (2005), to determine which of the alternative sets of elements the defendant "necessarily admit[ed] when he pled guilty." *Faust*, 853 F. 3d at 51, 59 (citing *Mathis*, 136 S. Ct. at 2248). Permissible *Shepard* documents include "charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." *Johnson v. United States*, 559 U.S. 133, 144 (2010) (citing cases) ("*Johnson I*").

> [A]lthough step three invites the district court to examine the documents of the convicting court, the question to be answered remains concentrated on the _elements_ of the actual offense of conviction rather than on the specific facts of [the defendant's] conduct. The enquiry posed in step three is no broader than that posed under step two: what did [the defendant] "necessarily admit [] when he [pled] guilty"?

*Faust*, 853 F. 3d at 59-60. Such record materials must "speak plainly" to satisfy "*Taylor*'s demand for certainty" that the defendant was convicted of the "violent" form of the offense. *Mathis*, 136 S. Ct. at 2257. "If those documents do not identify the offense of conviction, however, the conviction may only serve as a predicate offense if _each_ of the possible offenses of conviction would qualify as a violent felony." *Holloway*, 630 F.3d at 257 (emphasis in original).

The government concedes that O'Shea's convictions for breaking and entering are not now valid ACCA predicate offenses. See Gov.'s Opp. at 2 n. 1. Therefore, if O'Shea's conviction for

either (a) unarmed robbery or (b) assault and battery with a dangerous weapon is not a valid predicate, he was improperly deemed an Armed Career Criminal and is entitled to be resentenced. As explained below, the court finds that Massachusetts unarmed robbery is not a violent felony. Therefore, the court need not address whether assault and battery with a dangerous weapon remains a valid predicate after Johnson II.

Unarmed robbery, in Massachusetts, requires that the defendant take money or property from a victim's person, with intent to steal it, either: (a) "by force or violence" or (b) "by assault and putting in fear." Mass. Gen. Laws Chapter 265, §19(b); Commonwealth v. Davis, 70 Mass. App. Ct. 314, 316 (2007). Massachusetts has adopted a broad definition of "force" that is used in only a minority of states. See Commonwealth v. Jones, 362 Mass. 83, 87 (1972). In Jones, the Supreme Judicial Court held that "the degree of force is immaterial" so long as it is "sufficient to produce awareness" of "the application of force which relieves [the victim] of his property." Id. at 89. Therefore, merely snatching a purse from a person's hand is sufficient, even if it is "so quick as to deny the victim any opportunity to resist." Id. In adopting this rule from the law of Kentucky, the Supreme Judicial Court in Jones rejected the majority rule that the "force" required to commit robbery must be sufficient to overcome resistance or cause physical injury. Id. at 88 (recognizing and

16

rejecting majority rule that "snatching does not involve sufficient force to constitute robbery, unless the victim resists the taking or sustains physical injury, or unless the article taken is so attached to the victim's clothing as to afford resistance").

Massachusetts Appeals Court cases since Jones have reaffirmed that "the snatching of a purse necessarily involves the use of force" sufficient to prove robbery. Commonwealth v. Ahart, 37 Mass. App. Ct. 565, 570 (1994); Commonwealth v. Zangari, 42 Mass. App. Ct. 931, 932 (1997)(affirming robbery conviction for purse-snatching, citing, among other cases, Commonwealth v. Sheppard, 404 Mass. 774, 778 (1989)); Commonwealth v. Brown, 2 Mass. App. Ct. 883, 883 (1974)(finding sufficient force where defendant "snatched the purse out of [the victim's] hand, touching neither her hand nor her body"). In Commonwealth v. Davis, the Massachusetts Appeals Court stated that the victim's "awareness of the theft" is not sufficient to transform a larceny from the person into a robbery. 7 Mass. App. Ct. 9, 11-12 (1979). That statement in Davis, however, is dicta because the defendant's conviction was affirmed on the basis that the jury could have found that the defendant committed the robbery by "assault and putting in fear." Id. at 12. That dicta does not alter the rule in Jones that the taking of property must be "sufficient to produce awareness," but need not be enough to inflict pain. Id. at 11. There is, therefore, a "realistic probability" that Massachusetts courts would apply

the robbery statute to a mere purse-snatching. <u>Moncrieffe</u>, 133 S. Ct. at 1684-85.

In interpreting a Maine statute, the First Circuit held in <u>United States v. Mulkern</u> that the minimal force required to snatch a purse from a victim's hand commensurate with the slight offensive touching sufficient to commit battery is not "force capable of causing physical pain or injury to another person." 854 F. 3d 87, 93-94 (1st Cir. Apr. 14, 2017)(<u>citing</u> Johnson I, 559 U.S. at 140); <u>see also Faust</u>, 853 F. 3d at 55 (reaffirming that "offensive assault and battery does not qualify as requiring 'violent force' under <u>Johnson I</u>...[as] has been recognized in this circuit long before <u>Johnson I</u> and ever since the first case to apply assault and battery as an ACCA predicate."). Accordingly, at least three courts in the First Circuit have held that armed robbery under Massachusetts law and, therefore, the lesser included offense of robbery, is not a violent felony for ACCA purposes. <u>United States v. Dubose</u>, 2016 WL 7365166, at *2 (D. Mass. Dec. 19, 2016)(Stearns, D.J.); <u>Lattanzio</u>, 2017 WL 519241, at *7 (Ponsor, D.J.); <u>United States v. Flannery</u>, 2017 WL 462145, at *2 (D.R.I. Feb. 1, 2017)(McConnell, D.J.). As the court concluded in <u>Flannery</u>, "the force exerted in the removal of a purse from a victim's person, though, simply does not equate to force 'capable of causing physical pain or injury to another person.'" <u>Id.</u>

These district court decisions were supported by dicta in *United States v. Castro-Vazquez*, in which the First Circuit applied the force clause of the definition of "crime of violence" in the United States Sentencing Guidelines (the "Guidelines"), U.S.S.G. §4B1.2(a),[2] to a Puerto Rico robbery statute, 33 L.P.R.A. §4826, that defined "robbery" as an "unlawful...tak[ing of] personal property...in the immediate presence" of another by either "violence" or "intimidation." 802 F.3d 28, 37 (1st Cir. 2015).[3] Under that statute, "violence" could include "the slightest use of force." *Id.* at 37. The court vacated and remanded for a determination of whether the defendant had been convicted of the robbery offense involving "violence" or the offense involving "intimidation," while declining to decide whether either form of robbery required violent force because the district court had not reached the issue. *Id.* at 37-38.

The court in *Castro-Vasquez* noted, nevertheless, that even if the trial court found that the defendant had been convicted of the

---

[2] "The definition of 'crime of violence' [in §4B1.2 of the Guidelines] is 'nearly identical' to the definition of 'violent felony' in the Armed Career Criminal Act, so courts 'consistently have held that decisions construing one of these phrases generally inform the construction of the other.'" *Castro-Vasquez*, 802 F. 3d at 35 n. 4.

[3] Castro-Vasquez had evidently been convicted under the pre-2009 version of the statute. In 2009, the Puerto Rico legislature repleaced "violence" with "force." *See* 33 L.P.R.A. §4826.

"violence" form of Puerto Rican robbery, he would not be subject to the §2K2.1(a)(2) guideline enhancement.[4] It reasoned that because "violence is defined under Puerto Rico law to include the slightest use of force," the offense would "fall short of the [G]uidelines requirement that the offense include an element of 'physical force,' which is defined as 'violent force--that is, force capable of causing physical pain or injury to another person.'" Id. (citing Martinez, 762 F. 3d at 133). The district court ultimately found that robbery under the Puerto Rico statute was not a crime of violence. See United States v. Castro-Vazquez, 176 F. Supp. 3d 13, 21 (D.P.R. Apr. 4, 2016).

After Castro-Vasquez, three courts of appeals held that comparable state statutes, which required only slight physical contact, such as a "bump" of a shoulder and a "yank" of a purse, for a robbery conviction, did not require "force capable of causing physical pain or injury to another person" as required to satisfy either the force clause of U.S.S.G. §4B1.2, see United States v. Bell, 840 F. 3d 963, 966 (8th Cir. 2016), or the ACCA, see United States v. Gardner, 823 F. 3d 793, 803-04 (4th Cir. 2016)(concluding

---

[4] U.S.S.G. §2K2.1(a)(2) provides for an offense level enhancement "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence," as defined in §4B1.2 of the Guidelines, "or a controlled substance offense."

that "the minimum conduct necessary to sustain a conviction for North Carolina common law robbery does not" meet Johnson I's "violent force" requirement, relying on North Carolina decisions finding that "pushing the victim's hand off of a carton of cigarettes" and "push[ing] the shoulder of an electronics store clerk, causing her to fall onto shelves while the defendant took possession of a television" involved sufficient force to sustain convictions). Moreover, in United States v. Parnell, the Ninth Circuit held that the Massachusetts crime of armed robbery, which can be committed with the same, minimal degree of force, is not a violent felony. 818 F. 3d 974, 978 (9th Cir. 2016).[5]

In Mulkern, using the same reasoning, the First Circuit held that robbery under the Maine statute, Me. Stat. Tit. 17-A, §651(1)(C), which is materially indistinguishable from unarmed robbery under the Massachusetts statute, was not a violent felony

---

[5] Parnell conflicts with the First Circuit's decision in United States v. Luna, discussed below, which held that Massachusetts armed robbery is a violent felony. 649 F.3d 91, 108 (1st Cir. 2011). Before Mulkern, other courts in this district held that Luna required that they find that Massachusetts armed robbery is a violent felony. See United States v. Ford, 05-cr-10326-FDS, Docket No. 114 at 12 (D. Mass. Nov. 16, 2016)(Saylor, D.J.); Berrios v. United States, 06-cr-10266-PBS, Docket No. 44 at 2 (D. Mass. Sept. 20, 2016)(Saris, C.D.J.); United States v. Remington, 98-10259-WGY, Docket No. 261 at 3 (D. Mass. Nov. 28, 2016)(Young, D.J.); United States v. Moon, 11-cr-10223-DJC, Docket No. 248 (D. Mass. Aug. 4, 2016)(Casper, D.J.). Because O'Shea was convicted only of unarmed robbery, the court need not address whether Luna remains controlling law concerning armed robbery after Mulkern.

under the ACCA. 854 F. 3d at 93–94. In Raymond v. State, 467 A. 2d 161, 162 (Me. 1983), the Maine Supreme Judicial Court interpreted a Maine statute that defined "robbery," in pertinent part, as the "'use[]'" of "'physical force on another' with the intent either to prevent or overcome resistance to the taking of the property or to compel the person in control of the property to give it up." Mulkern, 854 F. 3d. at 93 (quoting Raymond v. State, 467 A. 2d 161, 162 (Me. 1983)). The First Circuit explained that in Raymond,

> Maine's highest court recognize[d] that 'any physical force' suffices to satisfy the 'physical force' element in [robbery]. So, for example, 'the mere act of snatching a purse from the hand of a victim' is thus 'a sufficient act of physical force required for robbery,' even if the robber never made 'direct bodily contact' with the victim.

Id. The First Circuit held that because "any" force would be sufficient to commit robbery under Maine law, it was "clear" that "the crime does not require a showing of force 'capable of causing physical pain or injury'--something short of that will do." Id. at *5.

In Mulkern, the First Circuit declined to express an opinion on "what...the exact state of Massachusetts law may be." 854 F. 3d at 94. However, robbery in both Massachusetts and Maine is satisfied by a degree of force sufficient to alert the victim to the larceny. Compare Raymond, 467 A. 2d at 164 (requiring "more...than would be involved in a case where the victim was at the time unaware of a stealthy taking of her purse") with Jones,

22

362 Mass. at 89 (requiring "force...sufficient to produce awareness" of the theft). Indeed, as the court in Mulkern noted, in Raymond the Maine court explicitly adopted the Massachusetts rule articulated in Jones that "where...the actual force used is sufficient to produce awareness, although the action may be so swift as to leave the victim momentarily in a dazed condition, the requisite degree of force is present to make the crime robbery." Mulkern, 854 F. 3d at 92-93 (quoting Jones, 362 Mass. at 89); see also Raymond, 467 A. 2d at 164 (quoting the same language). Mulkern's holding that such force is not "violent force" persuades this court that the First Circuit will find that Massachusetts unarmed robbery is not a valid ACCA predicate.

The government argues, nevertheless, that Massachusetts unarmed robbery is categorically a violent felony because it "is always accompanied by the perpetrator's 'readiness to inflict bodily injury upon his victims,' meaning that the threat of force is implicit whenever a perpetrator takes property from a victim with sufficient force to make the victim aware of the taking." Gov.'s Opp. at 15 (citing Jones, 362 Mass. at 89).

However, a "readiness" to inflict bodily injury is not the same as a "threat" to do so. A "threat" is an "outward expression or indication of an intention to inflict pain, harm or punishment." Parnell, 818 F. 3d at 980 (citing Webster's Third New International Dictionary 2382 (2002); Am. Heritage Dictionary of the English

23

_Language_ 1813 (5th ed. 2011); _Black's Law Dictionary_ (10th ed. 2014)). As the Massachusetts Appeals Court explained in _Commonwealth v. Ditch_, "the word 'threat' has a well-established meaning in both common usage and in the law. It is 'the _expression_ of an intention to inflict evil, injury, or damage on another.'" 19 Mass. App. Ct. 1005 (1985). As an element of a crime, a "threat" requires, among other things, that the defendant "express[] an intent to injure a person, or property of another." Mass. Model Jury Instruction 6.700. Therefore, "a[n]...uncommunicated willingness or readiness to use such force...is not the same as a threat to do so." _Parnell_, 818 F. 3d at 980.

In any event, as explained earlier, "Congress, in the definition of 'violent felony,' expressly orients [courts] to the elements of the predicate crime," and it is those elements, not assumptions about the facts typically accompanying the crime, that control. _Faust_, 853 F. 3d at 62 (Barron, J. concurring). A "threat" is not an element of the crime of either form of robbery under Massachusetts law. _See_ _Luna_, 649 F.3d at 108 n. 18 ("[A]rmed robbery can be committed in two ways (using actual force or violence _or_ words or gestures that put the victim in fear).")(citing _Commonwealth v. Santos_, 440 Mass. 281, 286, 289 (2003)(explaining that the use of "actual force" or the "threat of force" are two "_alternative_...forms of assault" that can be used to commit robbery)(emphasis added). The Massachusetts courts have

24

repeatedly affirmed convictions for unarmed robbery based only on the use of minimal force, without any finding that a "threat" was made. As discussed earlier, the Supreme Judicial Court in Jones stated that the snatch of a purse can constitute robbery in situations where no threat is necessary to overcome the victim's resistance: for example, when the "snatching or sudden taking" is "so quick as to deny the victim any opportunity to resist." Jones, 362 Mass. at 89. Accordingly, in Brown, the Appeals Court affirmed a robbery conviction where the victim was not aware of the perpetrators until the moment she felt her purse pulled from her hand. 2 Mass. App. Ct. at 883.

The First Circuit's decision in Luna, which held that Massachusetts armed robbery is a violent felony, 649 F.3d at 108 n. 18, 108-09, does not require that unarmed robbery be found to be a violent felony. In holding that Massachusetts armed robbery required "violent force," the First Circuit in Luna did not provide any reasoning that could be extended to other crimes. Rather, it only stated that the defendant had "provided no reason for [the court] to conclude that the type of force involved in armed robbery is not violent force--that is, force capable of causing physical pain or injury, and we see no reason to do so." Id. at 108-09; see also id. at 108 n. 18 (stating that "both versions [of Massachusetts armed robbery] are proper ACCA predicates"). As explained earlier, the First Circuit in Castro-Vasquez and

*Mulkern*, both of which addressed offenses nearly identical to Massachusetts unarmed robbery, did not consider itself bound by *Luna*'s conclusion regarding the armed offense. *Luna*, therefore, is not controlling here.

In view of the foregoing, the court finds that unarmed robbery, as defined by the Massachusetts Supreme Judicial Court in *Jones*, 362 Mass. 83 (1972), is not categorically a "violent felony" within the meaning of the force clause of the ACCA.

Though robbery may be committed in two different ways--by "force or violence" or "assault and putting in fear"--the government does not argue that the statute is divisible into a "nonviolent" and a "violent" form. In any event, under the approach to divisibility employed by the First Circuit in *Tavares*, 843 F. 3d at 14-18, the offense is indivisible because the Supreme Judicial Court has held that a specific unanimity instruction need not be given regarding whether robbery was committed by "force or violence" or "assault and putting in fear." See *Santos*, 440 Mass. 284-90; see also *Commonwealth v. Jones*, 12 Mass. App. Ct. 489, 491 (1981) ("The particular type of force, actual or constructive, by which the robbery is committed is not an essential element of the crime, and it need not be pleaded in the indictment."). Therefore, Massachusetts unarmed robbery is never a violent felony within the meaning of the ACCA.

The court need not decide the validity of assault and battery with a dangerous weapon as an ACCA predicate to conclude that O'Shea is not now an Armed Career Criminal. If assault and battery with a dangerous weapon qualifies as a violent felony, O'Shea would only have two valid ACCA predicates, rather than the three predicates required to raise the ten-year maximum sentence. See 18 U.S.C. §924(e).

V.   ORDER

Accordingly, it is hereby ORDERED that:

1.   The defendant's Motion to Correct his Sentence (Docket No. 212) is ALLOWED.

2.   The defendant's previously-imposed sentence is VACATED.

3.   The defendant is committed to the custody of the United States Bureau of Prisons for a term of 120 months, which is now the statutory maximum sentence and is deemed served.

4.   The defendant shall begin forthwith serving a 60-month term of Supervised Release on the conditions previously imposed, which are stated on pages 3 and 4 of the attached Amended Judgment.

5.   The attached Amended Judgment shall enter.


UNITED STATES DISTRICT JUDGE